# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

DEIDRE PARKER                            )
         **Plaintiff**                     )
                                     )

v.                                 )  **Case No. 4:19-CV-00939- FJG**
                                   )

SONNY PERDUE, Secretary           )
UNITED STATES DEPARTMENT OF    )
AGRICULTURE, RMA               )
                                   )

UNITED STATES OF AMERICA       )
         **Defendant**                )

## AMENDED COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Deidre Parker, and for her causes of action against defendants

United States Department of Agriculture [hereafter USDA] alleges as follows:

### 1) JURISDICTION AND VENUE

2)      Plaintiff has exhausted all administrative remedies in that:

      a.  The Agency issued two final agency decisions in this matter.  The first FAD was

issued on July 2, 2019.  However, it was never received by either Plaintiff or her counsel, as

it was mailed to the wrong address for each.  Plaintiff's address at the time of the issuance of

the FAD was P.O. Box 300554, Kansas City, MO. 64130 while Plaintiff's Counsel's address

was 851 NW 45th Street, Suite 310, Kansas City, MO. 64116.  As shown in the Certificate of

Mailing in Exhibit 2 attached hereto, the FAD was mailed to prior addresses for each.  On

November 6, 2019, Plaintiff Deidre Parker spoke to, then emailed David Atkins stating that

she had not received the July FAD and requested that it be sent.  Upon investigation, it was

determined that the July FAD was sent to a different Deidre Parker located in Washington,

D.C.  Counsel for Plaintiff did not receive this FAD until on or after November 6, 2019.  A

1

copy of the email to David Atkins indicating the FAD was never received is attached hereto as Exhibit C.

b.    On September 30, 2019 defendant issued its second Final Agency Decision on Plaintiff's mixed claims for EEO case number 2018-00965.  That FAD was mailed U.S. Mail, Certified and was delivered on October 22, 2019.  A copy of the FAD and the Certified Mail Tracking is attached hereto as Exhibit A.  Plaintiff's claims were timely filed pursuant to 29 C.F.R. 1614.605(a).  Plaintiff timely filed her lawsuit on November 21, 2019.

c.    RMA – 2016-00088 Plaintiff timely filed her Complaint of Discrimination however she never received any Notice of Rights on that complaint that would have allowed her to file a formal complaint.

3)    Plaintiff timely filed this lawsuit within 30 days of receipt of each FAD.

4)    Plaintiff's causes of action are based upon three EEO complaints:  RMA-2016-00794, and RMA – 2018-00965.

5)    The issues accepted for investigation and actually investigated in RMA 2016-00794 include the following:

a.    Whether the Risk Management Agency (RMA or Agency) subjected Complainant to discrimination and harassment (nonsexual) based on age (YOB: 1960), sex (female), race(African American), color (light skinned) and reprisal (prior Equal Employment Opportunity (EEO) activity) when:

1.    On July 11, 2016 she was issued a Letter of Counseling (LOC);

2.    On unspecified dates, management denied her promotions to positions comparable to her degree but promoted Caucasian employees who lacked degrees;

2

3.      On unspecified dates, management denied her daily work assignments and special projects; and instead, tasked her with menial duties, i.e. cleaning file cabinets of old files; and

4.      Other incidents of harassment included but not limited to:

   a.  On May 20, 2016, Management cautioned her about her behavior while in the Beacon Café and failed to provide documentation to support the allegations against her;

   b.  On an unspecified date, insisted she work with an employee who degraded her and called her incompetent;

   c.  On unspecified dates, management conspired to have her terminated as a result of her prior EEO complaints;

   d.  On unspecified dates, she was made to feel isolated and treated differently than other staff members; and

   e.  On various occasions, management made false allegations against her and accused her of theft.

6)      The issues accepted for investigation and actually investigated in RMA 2018-00965 include the following:

   a.  Whether the Risk Management Agency (RMA or Agency) subjected Complainant to discrimination and harassment (nonsexual) based on race (Black), color (light skin), sex (female), age (Date of Birth (redacted), Physical disability (cardiac condition) and reprisal (prior Equal Employment Opportunity (EEO) activity), when:

      1.  On or about September 10, 2018, she was forced to retire;

3

2. On September 4, 2018, she learned management subjected her to a misconduct investigation;

3. On August 24, 2018, management issued her a Letter of Counseling (LOC);

4. On several dates, she was subjected to various incidents of harassment including but not limited to:

   a. From August 8 to September 4, 2018 her immediate supervisor scolded her, ignored her during working hours, accused her of disparaging and threatening other enployees; and

   b. On September 10, 2018, management ordered her to be escorted out of the building.

7) With regard to Complaint RMA-2016-00794, the Notice of Acceptance has factual errors in it. First, Plaintiff did contact her EEO officer within 45 days of the Counseling she received on May 20, 2016. She contacted Dena Davis, who is an EEO officer for the USDA and is located in Washington, D.C. Ms. Dena Davis referred Plaintiff to Deborah Davis in Kansas City because the EEO officer who had taken Plaintiff's prior complaints was absent.

8) Plaintiff did timely contact Deborah Davis. The dates in the Acceptance Letter are wrong as Plaintiff received the Letter of Counseling on June 11, 2016 and filed her complaint on July 7, 2016. She did not receive the letter of counseling on July 11 as set forth in the Notice of Acceptance of Claim.

4

9) Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331 because Plaintiff asserts federal causes of action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq.

10) Plaintiff was employed with the Defendant in Kansas City, Missouri. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Missouri, specifically in Kansas City, Missouri.

## PARTIES

11) Plaintiff is a black female who has participated in prior protected activity. She resides in Missouri.

12) Defendant Perdue, in his capacity as Secretary of the Department of Agriculture, RMA located at the Department of Veterans' Affairs in Washington, D.C.

13) The United States of America and it's Agency, The United States Department of Agriculture, Risk Management Agency [hereafter USDA] is located at 6501 Beacon Drive, Kansas City, Missouri.

## ALLEGATIONS COMMON TO ALL COUNTS

14) Plaintiff assumed the position of Program Management Assistant, GS-303-07, with the Risk Management Agency, Kansas City, Missouri on March 2011.

15) Complainant came into her position while completing a college degree at University of Missouri – Kansas City. She has over 25 years of federal service with various agencies and brought a wealth of experience to the position.

16) Plaintiff experienced race and age discrimination continuously during her time in her position.

5

17)     In 2013, Plaintiff made a formal complaint of discrimination against USDA.  That complaint was resolved in Plaintiff's favor in 2015.  Subsequent to that resolution, Plaintiff began being excluded from meetings in the division and kept abreast of any activities regarding administrative responsibilities.  She was given no work assignments or duties.  She filed another EEO complaint in November 2015 regarding being excluded from meetings and lack of work assignments.  She never received a Notice of Rights on that matter.

18)     During her tenure as a Program Management Assistant, the work in the area began to diminish.  As a result, the white employees who had the same job title and position but had less experience and education, were offered detail assignments, promotions and transfers.

19)     All of the other program management assistants were Caucasian and had no college degree.  Plaintiff, a black female, has a college degree.

20)     Plaintiff continuously requested special assignments, job shadowing, to work on details or reassignment, applied for promotions and requested to be moved out of the Product Management Division to a division that could provide her with consistent work.

21)     These requests were largely ignored while the same opportunities have been given to all of her Caucasian co-workers.

22)     Complainant remained a Program Management Assistant with the lowest grade (GS-7) and pay in RMA with a college degree.

23)     Even when the divisions to which Plaintiff sought the detail agreed to it, Plaintiff was denied those opportunities.  Plaintiff was relegated to walking around the agency asking branch chiefs and others if there was any work she could perform.  Beginning in approximately 2016, Plaintiff had no specific job duties or daily work assignments.

6

24)     Plaintiff apprised her supervisors and second line supervisors of her lack of work and daily assignments, but they have provided no remedy for her complaints.

25)     Because Plaintiff had no specific job duties, she was assigned menial tasks to perform including cleaning out file cabinets, copying,

26)     Despite her education and experience, Plaintiff was in her current assignment for nearly six years without advancement.  Instead, she was offered a 60 day detail in the FSA warehouse, a manual labor position.  This position was rated as a GS-6, below her grade level and far below her skills, knowledge, abilities and education.

27)     All other Program Management Assistants rotated in the front office to learn skills that would allow for their promotion.  Plaintiff was permitted to take part in that rotation only rarely and never after the year 2011.  Plaintiff asked continuously for that opportunity but was routinely and constantly denied.

28)     Complainant filed and won prior complaints regarding discriminatory treatment.  As a result of those complaints, Plaintiff ahs been the subject of further hostility and discrimination.  She has been subjected to ongoing discrimination based on race, age and sex.

29)     On the morning of May 6, 2015, Complainant went to the only food vendor available at the Beacon Building, the Beacon Café to get breakfast.  On this day, the grill cook gave her an egg sandwich that was undercooked.  When she asked if her food could be remade, the Cook smashed it with hi hand and slammed it into the trash.  Complainant reported the disrespectful behavior to FSA Management Services Division.

30)     The complaint was forwarded to Tiffany Buettgenbach.  Ms. Buettgenbach has been described by management officials as one known to retaliate against any person who lodges complaints against the Beacon Café.

31)     In an email from John Sianez to John Underwood, Ms, Buettgenbach is described as someone who will make every effort to retaliate against USDA for "actions and behaviors by her staff."

32)     Although management knew that Ms. Buettgenbach retaliated against USDA staff, when Ms. Buettenbach made outlandish accusations against Plaintiff, Management did not defend her as management had done for a male employee in the FSA.

33)     Ms. Buettenbach  made false allegations of theft, stealing, disruption of the workplace and unduly long breaks.  She recommended a 90 day ban from the Cafeteria for plaintiff, which was enforced by the Agency,

34)     Plaintiff was given a letter of counseling by her supervisor regarding her "behavior" in the Café although no investigation took place.  A letter of counseling is a prerequisite to the progressive disciplinary policy and is a first step in that process.

35)     Plaintiff believes that the letter of counseling was retaliation for Ms. Parker's complaints of discrimination and hostile work environment surrounding her issues of not having sufficient work, not being promoted, detailed or allowed additional training and being requested to perform work below her grade level.

36)     Plaintiff filed a formal complaint of discrimination as set forth above and the Agency accepted and investigated the nine issues.

37)     The harassment of which Plaintiff complains occurred on a continuing, pervasive basis.

38)     Plaintiff engaged in mediation on her complaint of discrimination on or about August 8, 2018.  After that, Plaintiff's supervisor refused to communicate with Plaintiff, ignoring

her during the day and excluding her from all conversations. That "cold shoulder" continued until August 24, 2018.

39)     On August 24, 2018, Plaintiff's supervisor issued her a counseling letter. He called Plaintiff into his office on that date, after having completely ignored her all day. At the end of the day, he called Plaintiff into the office and reprimanded her for speaking to a new employee in "an unprofessional manner."

40)     Plaintiff denies that she spoke to the employee in any manner that was other than friendly, open and professional.

41)     Plaintiff's supervisor also complained that Plaintiff should not have been speaking about the use of leave and credit hours to the new hire. Plaintiff explained that she was the timekeeper for the branch and told the new employee that she received copies of the leave notifications. That communication was professional and appropriate.

42)     Plaintiff's supervisor made a habit of disciplining Plaintiff for matters that were untrue on Friday afternoons after having ignored her all week.

43)     On September 4, 2018, Plaintiff learned that she was going to be investigated for violence in the workplace and received a letter of counseling. These actions were construed as an attempt to terminate Plaintiff.

44)     As the Agency refused to correct the discriminatory behaviors occurring in the workplace and was retaliating against Plaintiff for her complaints, Plaintiff retired from the Agency

45)     Plaintiff had no intention of retiring at that time but did so under duress as she was clearly being set up for termination by the workplace violence investigation.

46)     After Plaintiff's constructive discharge, the report was deemed to be unfounded.

47)    As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury and lost enjoyment of life.

## COUNT 1:  RACE DISCRIMINATION – DISPARATE TREATMENT
## ALL DEFENDANTS

48)    Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1-47.

49)    Plaintiff, a black female, is a member of a protected class.

50)    She was qualified for the position she held at the USDA and met her employer's legitimate performance expectations.

51)    Plaintiff suffered adverse job actions when management:

a.  Issued Plaintiff a Letter of Counseling and forbade her from entering the Beacon Café;

b.  Failed to allow Plaintiff to be trained in job duties that would allow her to be promoted;

c.  Refused transfer, promotion, detail, job shadow or reassignments that would allow her to create skills for her to be promoted;

d.  Promoted lesser qualified individuals into positions with career ladder potential while denying her the opportunity for promotion;

e.  Issued Plaintiff a Letter of Counseling for speaking inappropriately to a new employee;

f.  Refused to communicate with Plaintiff and excluded her from meetings necessary for her position;

g.  Refused to give plaintiff work consistent with her grade level;

h.  Required plaintiff to go from manager to manager seeking work with no assignments or job description that set forth assignments for her.

i.  Other events as set forth in the Statement of Facts.

52)  The Agency and Management Officials treated similarly situated Caucasian employees more favorably than Plaintiff.

53)  As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury and lost enjoyment of life.

## COUNT 2: RACIALLY HOSTILE ENVIRONMENT
## All Defendants

54)  Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1-.43.

55)  During the course of Plaintiff's employment with the defendant, Plaintiff experienced a racially hostile environment in that:

a.  Plaintiff was subjected to harassment as set forth in the Allegations Common to All Counts;

b.  The harassment was unwelcome;

c.  The harassment was based upon Plaintiff's race;

d.   The harassment was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive; and

e.   At the time the harassment occurred and as a result of it, Plaintiff believed the work environment to be hostile or abusive.

f.   Defendants knew or should have known of the harassment; and

g.   Defendants failed to take prompt, appropriate corrective action to end the harassment.

56)   As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury and lost enjoyment of life.

## COUNT 3:  SEX DISCRIMINATION – DISPARATE TREATMENT
## ALL DEFENDANTS

54.   Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1-52.

55.   Plaintiff, a black female, is a member of a protected class.

56.   She was qualified for the position she held at the USDA and met her employer's legitimate performance expectations.

57.   Plaintiff suffered adverse job actions when management:

a.   Issued Plaintiff a Letter of Counseling and forbade her from entering the Beacon Café while a male was not treated the same;

12

b.   Failed to allow Plaintiff to be trained in job duties that would allow her to be promoted;

c.   Refused transfer, promotion, detail, job shadow or reassignments that would allow her to create skills for her to be promoted;

d.   Promoted lesser qualified individuals into positions with career ladder potential while denying her the opportunity for promotion;

e.   Issued Plaintiff a Letter of Counseling for speaking inappropriately to a new employee;

f.   Refused to communicate with Plaintiff and excluded her from meetings necessary for her position while similarly situated white males were allowed to attend;

g.   Refused to give plaintiff work consistent with her grade level;

h.   Required plaintiff to go from manager to manager seeking work with no assignments or job description that set forth assignments for her.

i.   Other events as set forth in the Statement of Facts.

58)   The Agency and Management Officials treated similarly situated males more favorably than Plaintiff.

59)   As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury and lost enjoyment of life.

## COUNT 4: HOSTILE ENVIRONMENT BASED ON SEX
### All Defendants

13

60)     Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1-.48.

61)     During the course of Plaintiff's employment with the defendant, Plaintiff experienced a hostile environment, as set forth in the Allegations Relevant to All Counts, based on sex in that:

    a.  Plaintiff was subjected to harassment;

    b.  The harassment was unwelcome;

    c.  The harassment was based upon Plaintiff's sex;

    d.  The harassment was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive; and

    e.  At the time the harassment occurred and as a result of it, Plaintiff believed the work environment to be hostile or abusive.

    f.  Defendants knew or should have known of the harassment; and

    g.  Defendants failed to take prompt, appropriate corrective action to end the harassment.

63. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury and lost enjoyment of life.

## COUNT 5:  RETALIATION
### All Defendants

62)     Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1-48.

63)     Plaintiff complained to defendants her concerns that she was being discriminated against with her complaints in 2013 with a 2015 resolution and her 2016 Complaint.  She also attended mediation of those complaints and subsequent to that mediation, began to experience retaliation as a result.

64)     Plaintiff reasonably believed that Plaintiff was being harassed and / or discriminated against on the basis of race and sex or age.

65)     Defendant engaged in adverse actions against the Plaintiff including that they:

    a.  Plaintiff engaged in mediation on her complaint of discrimination on or about August 8, 2018.  After that, Plaintiff's supervisor refused to communicate with Plaintiff, ignoring her during the day and excluding her from all conversations.  That "cold shoulder" continued until August 24, 2018.

    b.  On August 24, 2018, Plaintiff's supervisor issued her a counseling letter.  He called Plaintiff into his officeo n that date, after having completely ignored her all day.  At the end of the day, he called Plaintiff into the office and reprimanded her for speaking to a new employee in "an unprofessional manner."

    c.  Plaintiff denies that she spoke to the employee in any manner that was other than friendly, open and professional.

    d.  Plaintiff's supervisor also complained that Plaintiff should not have been speaking about the use of leave and credit hours to the new hire.  Plaintiff explained that she was the timekeeper for the branch and told the new

15

employee that she received copies of the leave notifications. That communication was professional and appropriate.

e. Plaintiff's supervisor made a habit of disciplining Plaintiff for matters that were untrue on Friday afternoons after having ignored her all week.

f. On September 4, 2018, Plaintiff learned that she was going to be investigated for violence in the workplace and received a letter of counseling. These actions were construed as an attempt to terminate Plaintiff.

g. Issued Plaintiff a Letter of Counseling and forbade her from entering the Beacon Café while a male was not treated the same;

h. Failed to allow Plaintiff to be trained in job duties that would allow her to be promoted;

i. Refused transfer, promotion, detail, job shadow or reassignments that would allow her to create skills for her to be promoted;

j. Promoted lesser qualified individuals into positions with career ladder potential while denying her the opportunity for promotion;

k. Issued Plaintiff a Letter of Counseling for speaking inappropriately to a new employee;

l. Refused to communicate with Plaintiff and excluded her from meetings necessary for her position while similarly situated white males were allowed to attend;

m. Refused to give plaintiff work consistent with her grade level;

n. Required plaintiff to go from manager to manager seeking work with no assignments or job description that set forth assignments for her.

o. Other events as set forth in the Statement of Facts.

p. Other events as set forth in the Statement of Facts.

66) Plaintiff's complaints of racial and sex based harassment and / or discrimination were contributing and / or motivating factors in the adverse actions taken against Plaintiff.

67) As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury and lost enjoyment of life.

## COUNT 6: CONSTRUCTIVE DISCHARGE

68) Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1-48.

69) Plaintiff was wrongfully and / or constructively discharged from her employment on or about September 10, 2018 because of her race and / or sex.

70) Plaintiff learned on September 6, 2018 that she was to be the subject of a workplace violence investigation, after having received two letters of counseling and ongoing unofficial reprimands from her supervisor following the filing and mediation of her complaints of discrimination.

71) Defendants were clearly attempting to terminate Plaintiff because of her prior EEO activity.

72) Because of the investigation that placed her job at risk, Plaintiff retired from the USDA / RMA.

73) Plaintiff had no intention of retiring at that time but because of the heightened level of retaliation, did so under duress.

As a direct and proximate result of the conduct of Defendnats and the conduct of the supervisors and managers, acting within the course and scope of their employment, plaintiff suffered grievous injury and damage including, but not limited to past, present and future medical and psychiatric expense, lost wages, lost benefits, lost earning capacity mental anguish and pain including humiliation, embarrassment, depression, anxiety, anger and lost enjoyment of life.

WHEREFORE, Plaintiff respectfully prays that this court:

A.      Issue judgment against the defendants for all the damages that plaintiff has incurred, including without limitation, physical and personal injury, emotional distress, back pay, future pay, lost earnings, lost earning capacity, special damages, and all compensatory damages to which the plaintiff is entitled;

B.      Issue judgment against the defendants for equitable or injunctive relief;

C.      Issue judgment against the defendants, or any defendant, for punitive and / or statutory damages to which the plaintiff may be entitled due to the defendants' intentional violation of the rights of the plaintiff;

D.      Award plaintiff her reasonable attorneys' fees, costs and expenses;

E.      Award to plaintiff any and all such further relief as may be equitable and just.

Respectfully submitted,

RANDLES MATA, LLC

*/s/ Rebecca M. Randles*
Rebecca M. Randles, MO#. 40149
851 NW 45th Street, Suite 310
Kansas City, MO 64116
(816) 931-9901; (816) 931-0134 fax
rebecca@randlesmatalaw.com

18

ATTORNEY FOR PLAINTIFF

## PLAINTIFF'S DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury on all issues.

Respectfully submitted,

*/s/ Rebecca M. Randles*
REBECCA RANDLES                    MO #40149
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Kansas City, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@rmblawyers.com

ATTORNEY FOR PLAINTIFF

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of April, 2021, I electronically filed the above document with the

Clerk of the Court using the ECF system, which sent notification of this filing to all counsel of record.

*/s/ Rebecca M. Randles*
